Thomas John Malishaucki, Petitioner *v.* Commonwealth of Pennsylvania, Pennsylvania Game Commission, Respondent.

Argued February 5, 1981, before Judges MENCER, ROGERS and CRAIG, sitting as a panel of three.

*John Younglove,* with him *William B. Eagan,* for petitioner.

*Stuart M. Bliwas,* Assistant Attorney General, with him *Harvey Bartle, III,* Attorney General, for respondent.

OPINION BY JUDGE MENCER, April 8, 1981:

The hunting and trapping privileges of Thomas John Malishaucki (Malishaucki) were revoked for the period of September 1, 1980 through August 31, 1982 by administrative order of the Pennsylvania Game Commission following a signed acknowledgement of guilt by Malishaucki for violating Section 701 of The

Game Law (Game Law), Act of June 3, 1937, P.L. 1225, *as amended,* 34 P.S. §1311.701.[1]

Malishaucki raises two issues in his appeal. First, he questions whether or not the provision of the Game Law which he acknowledged violating, when he signed the field receipt and paid the sum of $200 to the game protector, is unconstitutionally vague in that it fails to provide for a method of measurement of a deer's antler. Although we can readily understand his desire to advance this contention, under the facts of this case, we must conclude that he may not collaterally attack his violation of the Game Law in an administrative proceeding relative to a revocation of his hunting privileges. The challenge which he wishes to mount here should have been made directly against the charge of a Game Law violation as to which he acknowledged his guilt. We can only review the administrative action of the revocation of Malishaucki's hunting privileges and not whether he violated the Game Law as charged by game protector Bond. *Department of Transportation, Bureau of Traffic Safety v. Grobes,* 45 Pa. Commonwealth Ct. 151, 405 A.2d 588 (1979). At this point in time, we may not consider whether Malishaucki should have acknowledged violating the Game Law or whether the provision of the Game Law in question may be unconstitutionally vague. *See Department of Trans-*

---

[1] Section 701 makes it unlawful for any person to possess or transport any game unlawfully killed, which, except during a declared open season, would include an "anterless deer." Section 501 (c) of the Game Law, 34 P.S. §1311.501(c), defines an "anterless deer" to mean a deer without an antler or a deer with antlers both of which are less than three inches long. The term "antler" is defined to mean the bony growth on the head of a deer regardless of its size or development. Malishaucki was in possession of a buck deer, killed by a friend, whose antlers, measured from their highest point to the deer's skull, were three inches in length but, when measured to the "button," a tiny piece of bony structure which lies above a deer's skull and surrounds the base of the antler, were only two and one-quarter inches long.

*portation, Bureau of Traffic Safety v. Lea,* 34 Pa.
Commonwealth Ct. 310, 384 A.2d 269 (1978).

The second question advanced by Malishaucki here
is whether or not the Pennsylvania Game Commission
abused its discretion in revoking his hunting and trap-
ping privileges when he was never advised of the pos-
sibility of a revocation, never given a hearing relative
to the revocation, and was allegedly advised that a
guilty plea would end the matter.

We must conclude that Malishaucki was not misled
in this regard since the last paragraph of the field re-
ceipt immediately above his signature reads: "The
cash penalty paid may not be full satisfaction for the
offense committed. The Game Commission, without a
hearing, may revoke your hunter's license and deny
you the privilege of hunting or trapping anywhere in
the Commonwealth as provided under Section 315(a)
[*sic*] of the Game Law.'"[2]

Malishaucki's attempt to attack his revocation on
the ground that he was not advised of the possible re-
vocation of his license must fail, in view of the express
notice to that effect which was set out in the field re-
ceipt. Moreover, even if Malishaucki was unfairly in-
fluenced to sign the field receipt, this would be in the
nature of a defect in the determination of guilt rela-
tive to a violation of the Game Law, a criminal pro-
ceeding, and could not subsequently be attacked rela-
tive to a revocation of license privileges, which is civil
in nature. *Department of Transportation, Bureau of
Traffic Safety v. Lea, supra.*

Accordingly, we make the following

ORDER

AND Now, this 8th day of April, 1981, the Pennsyl-
vania Game Commission's April 4, 1980 revocation of

___

[2] The reference should be to Section 315(1) of the Game Law,
34 P.S. §1311.315(1).

the hunting and trapping privileges of Thomas John Malishaucki from September 1, 1980 through August 31, 1982 is hereby affirmed.

This decision was reached prior to the resignation of Judge WILKINSON, JR.